**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MSP RECOVERY CLAIMS, | ) | |
| SERIES 44, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-5054 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff MSP Recovery Claims Series 44, LLC sued Defendant Zurich American

Insurance Company to recover unpaid amounts under the Medicare Secondary Payer Act.  To

Zurich's ears, the case has a familiar ring to it.  In 2017, Zurich faced two lawsuits in Florida

about the same topic brought by another member of the same corporate family, MSP Recovery

Claims, Series LLC (take a close look – notice the different name) (more on that later).

The plaintiff in Florida voluntarily dropped both cases.  But now, Zurich now finds itself

defending yet another lawsuit about the same thing, in another state, by a corporate relative of

the Florida plaintiff.  As Zurich sees it, this case is the third ride on the same merry-go-round.

The lawsuit feels like déjà vu all over again.

Zurich now seeks relief under Federal Rule of Civil Procedure 41(d).  Zurich believes

that MSP Recovery Claims Series 44, LLC – the plaintiff in this Illinois case – should foot the

bill for the Florida cases.  In Zurich's view, this Illinois case should not go forward until the

Illinois plaintiff pays the tab for the cases brought by the Florida plaintiff.

Zurich asks this Court to stay the case until the Illinois plaintiff (MSP Recovery Claims Series 44, LLC) pays the attorneys' fees and costs that Zurich incurred in defending the lawsuits brought by the Florida plaintiff (MSP Recovery Claims, Series LLC).

For the reasons stated below, the motion is denied. Rule 41(d) applies when both cases involve the same plaintiff. But here, the Illinois case has a different plaintiff than the Florida cases.

## Background

Before taking the reader on a ride through the backcountry, the Court offers a forewarning. The journey is not for the faint of heart. It's a bumpy ride, with a lot of twists and turns. And along the way, many of the signs are difficult to read.

One of the main challenges involves the sheer number of MSP-named entities in the cast of characters. The corporate family includes quite a few entities, and they played different roles at different times. There's MSP Recovery, LLC. And MSP Recovery Claims, Series LLC (the Florida plaintiff). They are not to be confused with MSP Recovery Claims Series 44, LLC (the Illinois plaintiff). And so on.

Without a sharp eye, they can blur together. And before long, eyes glaze over, and then heads start to spin. If someone in the proverbial MSP-Land was trying to make things confusing, they deserve a promotion. It has the distinct feel of a shell game with enough shells to fill a healthy stretch of the Atlantic seaboard. For now, the key point is this: if you think it is difficult to tell who is who, you're not alone.

At bottom, this case is about an attempt to recover Medicare payments. Medicare is "the federal health insurance program for people who are 65 or older." *MAO-MSO Recovery II, LLC v. State Farm Mut. Aut. Ins. Co.*, 935 F.3d 573, 577 (7th Cir. 2019). Many people receive

2

benefits directly from the government from Medicare Parts A and B. *Id.* Others, however, enroll in Part C, under which private entities, known as Medicare Advantage Organizations, provide benefits. *Id.*

In many circumstances, a Medicare beneficiary's healthcare costs are paid entirely by Medicare or a Medicare Advantage Organization. *Id.* But under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, private insurance companies can sometimes assume primary payer obligations to pay for a beneficiary's healthcare costs.

Examples include when an enrollee is injured in a car accident caused by another driver, or if the enrollee carries his or her own private insurance. *Id.* In those situations, Medicare or the Medicare Advantage Organization becomes the secondary form of coverage. *Id.* The private insurance companies are supposed to be the catcher's mitt, and Medicare and the Medicare Advantage Organizations are supposed to be the backstop.

Some of the time, the private insurance companies do not pay what they owe. And in the end, Medicare or the Medicare Advantage Organization foots the bill as the secondary payor. So Congress authorized a private right of action to allow private entities to recover the payments owed by recalcitrant primary insurers. *See* 42 U.S.C. § 1395y(b)(3)(A).

The story begins with a would-be assignment of rights to bring a cause of action under the Medicare Secondary Payer Act. (The key phrase is "would-be" – more on that later.) The assignment took place in April 2016. *See* Recovery Agreement (Dckt. No. 39-6).

The assignment was supposed to go from Health First Health Plans, Inc. ("HFHP"), a Medicare Advantage Organization. And the assignment was supposed to go to MSP Recovery, LLC ("MSP Entity #1"). So far, so good.

But it wasn't all good. The signatory to the assignment agreement wasn't HFHP, the company with the rights. Instead, the actual signatory was a related entity, Health First Administrative Plans ("HFAP"). *Id.*

It may look like a small difference. It's HF*H*P vs. HF*A*P. But they are different entities, with different rights. So it is a big difference after all. Sometimes small differences make all the difference.

The botched names meant that there was a botched assignment. HFAP purported to assign rights that it didn't have. And HFHP kept hold of rights that it intended to assign. The company with nothing (HFAP) purported to assign *something*, and the company with something (HFHP) assigned *nothing*.

That's the easy part. From here on, things get a little more complicated.

The assignment purported to put the rights into the hands of MSP Recovery, LLC ("MSP Entity #1").[1] That company, in turn, apparently assigned the rights to a related entity, MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"). And MSPRC then ran with them.

MSPRC filed two lawsuits against Zurich American Insurance Company in Florida. But in reality, MSPRC ran into court empty-handed. It brought suits that it had no right to bring, because of the botched assignment.

---

[1] As an aside, in its brief, Plaintiff proposed calling MSP Recovery, LLC by the shortened name "MSP Recovery." *See* Pl.'s Supp. Mem., at 2 (Dckt. No. 39) ("The declaration of corporate counsel for MSP Recovery, LLC ('MSP Recovery'), Jorge Lopez."). That's more than a little confusing when the case involves at least three entities that go by the name "MSP Recovery," including MSP Recovery, LLC ("MSP Entity #1"), and MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"), and MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). It is like having three people in a case named Bob, and then deciding to call only one of them Bob.

MSPRC (again, "MSP Entity #2") filed the first Florida case in August 2017. It brought a class action complaint against Zurich in Florida state court, bringing claims under the Medicare Secondary Payer Act for failure to reimburse Medicare Advantage Organizations for conditional payments made on behalf of Medicare beneficiaries. *See MSP Recovery Claims, Series LLC v. Zurich Am. Ins. Co.*, 1:17-cv-24013 (S.D. Fla. 2017) (Dckt. No. 1-2). The case was later removed to federal court in the Southern District of Florida. *Id.* (Dckt. No. 1). That's "*Zurich I*."

Over the course of nine months, MSPRC amended its complaint in *Zurich I* twice, each time in response to a Zurich motion to dismiss based on lack of standing. *Id.* (Dckt. Nos. 13, 15, 33, 40, 44). Along the way, the parties engaged in discovery, and MSPRC filed and then withdrew several motions. *Id.* (Dckt. Nos. 32, 62).

In August 2017 (the same time it filed *Zurich I*), the same plaintiff, MSPRC, filed a second complaint against Zurich in Florida state court. *See MSP Recovery Claims, Series LLC v. Zurich Am. Ins. Co.*, 1:17-cv-24015 (S.D. Fla. 2017) (Dckt. No. 1-2). That's "*Zurich II*."

Once again, MSPRC brought allegations against Zurich on behalf of a purported class under the Medicare Secondary Payer Act based on its alleged failure to reimburse secondary payers. *Id.*, Cplt. (Dckt. No. 1-2). *Zurich II*, like *Zurich I*, was removed to the Southern District of Florida. *Id.* (Dckt. No. 1).

The case progressed in the same manner as *Zurich I*, too. Zurich filed a motion to dismiss the complaint for lack of standing (Dckt. Nos. 12, 48, 57), and MSPRC amended its complaint several times in response (Dckt. Nos. 18, 57). The parties took discovery, too.

In both Florida cases, MSPRC (again, "MSP Entity #2") alleged that it had rights assigned by Medicare Advantage Organizations. But MSPRC did not specify *which* Medicare

Advantage Organizations. Instead, the complaints referred to assignments from Medicare

Advantage Organizations generally. *See MSP Recovery Claims, Series LLC v. Zurich Am. Ins.*

*Co.*, 1:17-cv-24013 (S.D. Fla. 2017) (*Zurich I*) (Complaint, at ¶ 2) (Dckt. No. 1-2) ("Plaintiff

asserts the rights of MAOs, and their assignees, via assignment of all rights, title, and interest

allowing them to bring these claims."); *MSP Recovery Claims, Series LLC v. Zurich Am. Ins.*

*Co.*, 1:17-cv-24015 (*Zurich II*) (Complaint, at ¶ 5 n.1) (Dckt. No. 1-2) (same).

The Florida complaints did not come out and say that HFHP was one of the Medicare

Advantage Organizations that had assigned the claims to MSPRC. But given the breadth of the

language, the Florida complaints seemingly covered the assignment of rights that MSPRC had

received from *any* Medicare Advantage Organizations, including a would-be assignment from

HFHP.

Before long, people started to realize that the assignment was botched. A district court in

the Central District of Illinois dismissed one such lawsuit for lack of standing. *See MAO-MSO*

*Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, Case No. 17-cv-1541, 2018 WL 2392827

(C.D. Ill. May 25, 2018); *see also MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965

F.3d 1210, 1215 (11th Cir. 2020); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins.*

*Co.*, 935 F.3d 573, 581 (7th Cir. 2019) ("Nothing in the agreement between [HFHP] and HFAP

suggests that [HFHP] was assigning away any of its rights. Without such an assignment,

HFAP's own assignment to plaintiff Recovery Claims conveyed nothing, and thus the plaintiffs

had no rights to enforce and no standing to sue."). The dam started to burst.

At that point, the parties sprung into action to repair the holes. HFHP (that is, the

company that had the rights) entered into an agreement to assign the claims retroactively from

2016. *See* 6/1/18 Assignment (Dckt. No. 39-7).[2]  The assignment went to MSP Recovery, LLC,

meaning "MSP Entity #1."  That assignment took place in June 2018.  *Id.*

The folks in MSP-Land apparently realized that there was a problem with the cases in

Florida.  Again, MSPRC ("MSP Entity #2") had brought two suits based in part on an

assignment of rights from a company that had no rights to assign (meaning HFAP).  So MSPRC

voluntarily dismissed each case on August 1 & 2, 2018.  *See MSP Recovery Claims, Series LLC*

*v. Zurich Am. Ins. Co.*, 1:17-cv-24013 (S.D. Fla. 2017) (*Zurich I*) (Notice of Voluntary

Dismissal) (Dckt. No. 75); *MSP Recovery Claims, Series LLC v. Zurich Am. Ins. Co.*, 1:17-cv-

24015 (*Zurich II*) (Notice of Voluntary Dismissal) (Dckt. No. 88).

It is time for a brief intermission, to let the reader catch his or her breath.  The key

takeaway is that MSPRC ("MSP Entity #2") sued Zurich in Florida (twice), purporting to have

rights under an assignment from HFHP.  But the assignment was from HFAP, not HFHP.  So it

dropped both cases.  At this point in the story, there was a lot of churning, but not much

advancing of the ball.

Before long, things started moving again.  Recall that HFHP (the company with the

rights) assigned its rights to MSP Recovery, LLC ("MSP Entity #1") in June 2018, after people

discovered the botched assignment.  Then, on August 21, 2019, MSP Recovery, LLC ("MSP

Entity #1") assigned the rights that it had received from HFHP in June 2018.  Specifically, MSP

Recovery, LLC ("MSP Entity #1") assigned the rights to MSPRC ("MSP Entity #2").  *See*

---

[2]  Plaintiff flips back and forth with the terminology, calling this document the "Nunc Pro Tunc Agreement" and sometimes the "Nunc Pro Tunc Assignment," without citing the exhibit number.  *See* Pl.'s Supp. Mem., at 3 (Dckt. No. 39).  Based on the description in CM/ECF (identifying Dckt. No. 39-7 as the "HFHP Nunc Pro Tunc Assignment"), the document in question was an assignment signed by HFHP only.

8/21/19 Assignment (Dckt. No. 39-8). It was the same as the original assignment in 2016, with one big exception: this time, MSP Recovery, LLC ("MSP Entity #1") had something to assign.

At that point, for the first time, MSPRC ("MSP Entity #2") had rights in hand. And MSPRC, in turn, passed the baton. MSPRC assigned the rights to a member of the MSP Corporate Family that the reader hasn't met yet: good ol' MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). That's the plaintiff in the lawsuit at hand.

At this point, the Court needs to pause the story, take a detour, and go for a drive into the land of Delaware corporate law. A limited liability company can have something called a "series," and it is a bit of an odd creature. Technically speaking, it is not a creature at all, in the sense that it is not a freestanding corporate entity.

Under Delaware law, a limited liability company agreement "may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets." *See* D.G.C.L. § 18-215(a). Any such series "may have separate rights, powers or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective." *Id.*

Basically, a series is a "grouping of members, assets, business, and liability with schedular (allocating the financial results of particular businesses or assets to particular owners of organization) and cellular (separation of assets or businesses and the liabilities related to them from the assets, businesses and liabilities of other protected series and of the series LLC generally) characteristics within a single legal organization." *See* 2 Larry E. Ribstein, Robert R. Keatinge, & Thomas E. Rutledge, Ribstein and Keatinge on Limited Liability Companies § 26.1 (June 2023 update).

8

Think of a series as a cell in a larger corporate body. "A protected series may be thought of as a cell with assets, liabilities and owners that are unique to the protected series." *Id.*

The basic idea (as is often the case under Delaware law) is to limit liability. The master LLC assigns assets to a particular series, and the master LLC (and any *other* series) is not responsible for the liabilities of that series. *See* Jesse A. Finkelstein & R. Franklin Balotti, The Delaware Law of Corporations & Business Organizations § 20.7 (4th ed. 2023) ("Any such series may have separate purposes, and separate rights, powers, and duties with respect to specified assets and liabilities of the Delaware LLC, and the profits and losses associated therewith. A goal of setting up a Delaware LLC with series is to have inter-series liability protections, whereby the debts, liabilities, obligations, and expenses incurred, contracted for or otherwise existing with respect to such series shall be enforceable against the assets of such series only, and not against the assets of the Delaware LLC generally."); *see also* J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-By-State Guide to Law & Practice § 14:18 (2022 ed.) ("The designated series can have separate purposes, and separate rights, powers and duties with respect to specified LLC assets and liabilities, and the profits and losses associated therewith. If distinct records are maintained for a series and the series' assets are separately held and accounted for, and if the limited liability agreement so provides, then liabilities and debts with respect to a particular series would be enforceable against that series' assets only, and not against other series' assets."). To extend the analogy, if a cell gets cancer, it cannot spread to other parts of the corporate body.

A series isn't really an entity in its own right, strictly speaking. *See* 2 Ribstein and Keatinge on Limited Liability Companies, *supra*, at § 26.2 ("In many respects, each protected series is similar to a separate LLC, but in most cases statutory protected series provisions do not

9

identify a protected series as an 'entity.'"). They are the spawn of a larger entity, but they aren't entities themselves.

A series is not an entity, as a technical matter. In that sense, it is not a *person*. But under Delaware law, it can sue and be sued. It all depends on what the LLC agreement says. *See* Del. Code Ann. Tit. 6, § 18-215(b)(1) ("[A] protected series shall have the power and capacity to, in its own name . . . sue and be sued," except as "otherwise provided in a limited liability company agreement."). So a series has a zombie-like existence. It can do things, and it can attack and be attacked, but strictly speaking, it isn't alive.

Why the detour into Delaware corporate law? Again, the plaintiff here is MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). By the look of things, you might think that MSP Recovery Claims Series 44, LLC ("MSP Entity #3") is a *series of* MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"). After all, the phrase "Series 44" appears right in the name.

Turns out, that phrasing was simply a head-fake. MSP Recovery Claims Series 44, LLC ("MSP Entity #3") isn't a *series of* MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") at all. Instead, it is its own company.

That is, MSP Recovery Claims Series 44, LLC ("MSP Entity #3") is a freestanding limited liability company, and has a separate legal existence from MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"). Each company has its own Certificate of Formation with the State of Delaware. *See* 2/14/17 Certificate of Formation of MSP Recovery Claims Series, LLC (Dckt. No. 39-2); 10/22/20 Certificate of Formation of MSP Recovery Claims Series 44, LLC (Dckt. No. 39-1).

Put another way, MSP Recovery Claims Series 44, LLC ("MSP Entity #3") isn't a cell of MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"). It is its own body.

For reasons that this Court will explain later (sit tight), the fact that the plaintiff here has a separate legal existence makes a big difference when it comes to Rule 41(d). (If heads are spinning at this point, it wasn't for lack of a forewarning.)

Back to the story. Before the break, MSPRC ("MSP Entity #2") had just passed the baton and assigned its rights to MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). But to be technical about it, a *series* of MSPRC ("MSP Entity #2") assigned the rights to a *series* of MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). *See* Assignment (Dckt. No. 39-10).

More specifically, for any interested reader who craves technicalities, Series 16-05-456 (a designated series of MSP Recovery Claims LLC) (meaning MSPRC, or "MSP Entity #2") assigned its rights to Series 44-20-456 (a designated series of MSP Recovery Claims Series 44, LLC) (meaning "MSP Entity #3". So, a series of "MSP Entity #2" assigned the rights to a series of "MSP Entity #3."[3]

---

[3]  At this point, an astute reader might wonder why the *series* of MSP Recovery Claims Series 44, LLC ("MSP Entity #3") isn't the plaintiff here, instead of MSP Recovery Claims Series 44, LLC. After all, the series – not the master LLC – received the assignment of claims. Nothing prevents the series from filing suit. Under Delaware law, a series can stand on its own two feet in a courtroom, and can sue and be sued. Even so, some courts have held that, under Delaware law, the master LLC can sue on behalf of the series, *or* the series itself could sue. The fact that the series owns the asset does not prevent the master LLC from filing the claim on behalf of the series. It largely depends on what the LLC agreement says. By way of analogy, imagine a science fiction movie involving a large alien mothership, and a lot of small alien ships that fly out of it to do battle. Basically, the mothership could attack by filing suit, or the fighter jets (or TIE-fighters) flying out of the mothership could sue, even though the right to sue is held by the fighter jets. Some courts have found this arrangement to be an abuse of the corporate form. *See MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038, at *11 (D. Mass. 2023) ("Federal courts have diverged on their approach to this issue.") (collecting cases). Maybe that issue is an issue for another day in this case.

And then, HFHP (meaning the company that assigned the rights) entered into a purchase agreement with MSP Recovery Claims Series 44, LLC ("MSP Entity #3") (or, to be technical, with a *series* of MSP Entity #3).  *See* Purchase Agreement (Dckt. No. 39-11).  That purchase agreement dated January 4, 2021 defined the scope of the assignment of rights.

That's the backstory to the story.  The next shoe to drop was the lawsuit at hand.

On September 16, 2022, MSP Recovery Claims Series 44, LLC ("MSP Entity #3") filed a complaint against Zurich here in the Northern District of Illinois.  *See* Cplt. (Dckt. No. 1).  It basically seeks to recover damages under the Medicare Secondary Payer Act for Zurich's failure to reimburse HFHP's conditional payments on behalf of Medicare beneficiaries.

The complaint includes two counts.  Count One alleges a violation of the Medicare Secondary Payer Act, under 42 U.S.C. § 1395y(B)(3)(A).  *Id.* at ¶¶ 58–67.  Count Two seeks a declaratory judgment under 28 U.S.C. § 2201, to establish that Zurich has a duty to reimburse HFHP for medical expense payments made on behalf of Medicare beneficiaries.  *Id.* at ¶¶ 68–85.

Needless to say, to Zurich's ears, the case had a familiar ring.  A little too familiar.  Zurich believes that the folks in MSP-Land are now trying to bring in Illinois the claims that they brought – and then dismissed – in Florida.

Zurich now asks this Court to impose costs and stay the proceedings under Rule 41(d).  *See* Def.'s Rule 41(d) Mtn. (Dckt. No. 17).  The basic idea is that a plaintiff cannot sue a defendant, drop the case voluntarily, and then sue the same defendant on the same claim somewhere else, unless that plaintiff pays the bill.

That motion is now before the Court.  On May 8, 2023, this Court issued a few orders that posed specific questions, and directed the parties to file supplemental submissions.  *See*

5/8/23 Orders (Dckt. Nos. 35–37).  The parties later did so.  *See* Def.'s Supp. Mem. (Dckt. No. 38); Pl.'s Supp. Mem. (Dckt. No. 39).

The tour of the backcountry is now complete.  The road was bumpy, but hopefully it will be smooth sailing going forward.[4]  The question is whether this Court should order MSP Recovery Claims Series 44, LLC ("MSP Entity #3") to pay the costs of Florida litigation brought by MSPRC ("MSP Entity #2").

## Analysis

Rule 41 governs the voluntary dismissal of actions.  Basically, the Federal Rules allow a plaintiff to drop a lawsuit in certain circumstances.  But there is a catch.  If the plaintiff later refiles the case, the second court can order the plaintiff to pay defense costs from the first lawsuit.

Specifically, Rule 41(d) provides:  "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:  (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."  *See* Fed. R. Civ. P. 41(d).

The operative verb is "may," not "must."  *Id.*  A district court "may" order costs, and "may" stay the proceedings.  *Id.*  But it doesn't have to.  The decision to award fees and stay the

---

[4] Along the way, Plaintiff's brief made statements that could receive nominations for Understatement of the Year.  Here's one:  "It is not lost on Series 44 that this chain of assignments is complicated."  *See* Pl.'s Supp. Mem., at 7 (Dckt. No. 39).  Here is another:  "As an aside, Series 44 appreciates that the MSP entities' early efforts could have been handled with more care."  *Id.* at 8.  Several courts have commented on the sloppiness of litigation efforts by MSP-related entities.  *See MSP Recovery Claims, Series LLC v. AIG Property Cas. Co.*, 2021 WL 11645091, at *6 n.8 (S.D.N.Y. 2021) ("Plaintiff has no excuse for such sloppiness, and this is not the first time that it has been admonished for these sorts of errors."); *MSP Recovery Claims, Series LLC v. N.Y. Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *5 (N.D.N.Y. 2019) (noting that "the Court is faced with a messy Complaint, improper exhibits, and Plaintiffs' inconsistent arguments").

case is within the discretion of the court. *Id.* But if a district court does award costs, those costs can include attorneys' fees. *See Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000).

The purpose of Rule 41(d) "is to deter forum shopping and vexatious litigation." *Id.*; *see also Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 874 (6th Cir. 2000) ("Rule 41(d) is also intended to prevent attempts to gain any tactical advantage by dismissing and refiling the suit.") (internal quotations omitted). A plaintiff gets only one bite at the apple before the Federal Rules permit a district court to charge for more bobbing.

Zurich argues that this case is an attempt to bob for apples a second time, in the hope of getting a second bite at the apple. *See* Def.'s Mem. in Support of Rule 41(d) Mtn. (Dckt. No. 18). After all, MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") already filed two actions against Zurich in the Southern District of Florida. *See MSP Recovery Claims, Series LLC v. Zurich American Insurance Co.*, No. 1:17-cv-24013 (S.D. Fla. 2017); *MSP Recovery Claims, Series LLC v. Zurich American Insurance Co.*, No. 1:17-cv-24015 (S.D. Fla. 2017).[5]

The Florida cases were nearly identical to each other. "Both cases were brought under the federal Medicare Secondary Payer Act and involved substantially identical claims." *See* Def.'s Mem. in Support of Rule 41(d) Mtn., at 1 (Dckt. No. 18). And in each case, Zurich filed three motions to dismiss, and MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") eventually dismissed each case.

---

[5] At risk of adding more complications, Zurich also identifies a third case brought by an MSP Recovery Series entity, *MSP Recovery Claims, Series LLC v. Zurich American Insurance Company*, 18-cv-7849 (N.D. Ill.) ("*Zurich III*"). *See* Def.'s Mem. in Supp. of Rule 41(d) Mtn., at 1 (Dckt. No. 18). That case, however, was dismissed by Judge Gettleman for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See Zurich III*, Mem. Opin. & Order, at 1 (Dckt. No. 51). Because Rule 41(d) applies only where the plaintiff has voluntarily dismissed an earlier action, *Zurich III* has no impact on this Court's ruling. *See* Fed. R. Civ. P. 41(d).

As Zurich sees things, it should not have to defend itself on the same basic claims in another district. MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") already laid down stakes in Florida, so it should not get to pull up stakes and litigate elsewhere, without paying the bill from the first trip to the courthouse.

Zurich does not get very far before running into a roadblock in the text of the Federal Rules. Rule 41(a) provides that "*a plaintiff* who previously dismissed an action" may have to pay the costs of the first action before proceeding with the second action. *See* Fed. R. Civ. P. 41(a) (emphasis added).

Notice the use of the phrase "a plaintiff," singular. *Id.* Rule 41(d) contemplates that the same plaintiff will appear in the first case and in the second case. By its plain terms, Rule 41(d) does not apply if the first case has a different plaintiff than the second case. The Rule contemplates a simple scenario: Plaintiff A vs. Defendant B in lawsuit #1, and then Plaintiff A vs. Defendant B in lawsuit #2.

That's not the situation at hand. The Florida cases involved claims by MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2"). But the case at hand involves claims by MSP Recovery Claims Series 44, LLC ("MSP Entity #3"). In effect, the Florida cases involved Plaintiff A vs. Defendant B, and this Illinois case involves Plaintiff C vs. Defendant B.

Again, MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") and MSP Recovery Claims Series 44, LLC ("MSP Entity #3") are distinct entities, with an independent legal existence. Each company is its own LLC. And one is not the series of the other. They're different companies, albeit cousins in the same dysfunctional corporate family.

15

Put another way, MSP Recovery Claims, Series LLC ("MSPRC," or "MSP Entity #2") and MSP Recovery Claims Series 44, LLC ("MSP Entity #3") are not different tentacles of the same octopus. They're different octopi.

That being said, one wonders if the text of Rule 41(d) has a gaping loophole. By its plain terms, the Rule requires the same plaintiff in both cases. It does not appear to apply to an assignment of a claim from one plaintiff to another plaintiff. An assignment of a claim seems to fall through the cracks in the text of the Rule. If there ever were a case where Rule 41(d) *should* cover an assignment, this is it.

Imagine if Plaintiff A had "Right X," with "Right X" being a right to bring a specific cause of action. Imagine if Plaintiff A brought that cause of action based on Right X against Defendant B, and then dismissed it. And then, imagine if Plaintiff A assigned Right X to Plaintiff C, and then Plaintiff C sued Defendant B based on Right X. Would Rule 41(d) apply?

Based on a plain reading of Rule 41(d), the answer appears to be no. The text refers to a singular plaintiff. And in this scenario, Plaintiff A and Plaintiff C are different.

Then again, it is hard to see why Rule 41(d) *shouldn't* apply. Imagine if Plaintiff A is holding a bundle of rights, and one of those rights (Rights X) is the right to bring a particular cause of action. Imagine if Plaintiff A pulled that stick from its bundle, and then took a swing at Defendant B by bringing a claim and asserting Right X.

What if Plaintiff A drops the case, and then hands the stick to Plaintiff C? And then, what if Plaintiff C swings it at Defendant B? If Plaintiff C takes a swing at Defendant B with the same stick (meaning Right X) swung by Plaintiff A, would Rule 41(d) apply?

Try a baseball analogy. Imagine if the plaintiffs are batters, and if the cause of action is a bat. Think of Right X – again, the right to bring a cause of action – as a particular bat. Do the

16

batters have to be the same for Rule 41(d) to apply? Or, what if it is the same *bat*? Can two batters (meaning two plaintiffs) swing the same bat twice?

This situation is probably another example of where the text and the purpose of the Federal Rules diverge. The text says "a plaintiff," singular. *See* Fed. R. Civ. P. 41(d). So, based on a plain language reading, it is hard to avoid the conclusion that Rule 41(d) does not apply to two plaintiffs / two batters. *See Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1281–82 (Fed. Cir. 2015) (holding that a related provision of Rule 41 was "inapplicable by its plain terms" to cases filed by two different plaintiffs); *see also Pavelic & LeFlore v. Marvel Entm't Grp.*, 439 U.S. 120, 123 (1989) (instructing district courts to "give the Federal Rules of Civil Procedure their plain meaning").

Then again, it is hard to see why the second plaintiff – after an assignment from the first plaintiff – *shouldn't* have to pay the costs from the time when the first batter stepped up to the plate. Why should a defendant have to face the same claim twice, if the first batter handed the same bat to the second batter? And if the opposing team has to face the second batter with the same bat swung by the first batter, why shouldn't the second plaintiff pay for it?

If the goal is to protect a defendant from having to face the same claim twice, then that interest would equally apply if there is an assignment. That is, the interest in protecting a defendant would apply if Plaintiff A brings the same claim twice, *and* if Plaintiff A brings a claim and then Plaintiff C brings the same claim after an assignment from Plaintiff A.

Even so, there is no need to descend any deeper into this rabbit hole. The plaintiff in Florida (MSP Recovery Claims, Series LLC, also known as MSPRC, or "MSP Entity #2") is different than the plaintiff in Illinois (MSP Recovery Claims Series 44, LLC, or "MSP Entity #3"). Based on the text of Rule 41(d), that's enough to resolve the motion.

If the Rule did apply to assignments, then the Court would have to keep burrowing into the rabbit hole until it hit pay dirt. And on this record, it would be tough digging. Figuring out whether the Illinois case is "based on or includ[es] the same claim" as the Florida cases within the meaning of Rule 41(d) is more difficult than it first appears. *See* Fed. R. Civ. P. 41(d).

MSP Recovery Claims Series 44, LLC ("MSP Entity #3") believes that the Florida cases (on the one hand) and the Illinois case (on the other) involved different claims because the Florida plaintiff had no rights. Once again, it all goes back to the botched assignment. *See* Pl.'s Supp. Mem., at 8 (Dckt. No. 39) ("In sum, MSPRC never obtained an assignment of the M.B. claim until long after its voluntary dismissal of the Florida Litigation. For this reason, that case did not involve the 'same claim' as this one, as required for Rule 41(d) to apply.").

As the company sees it, the plaintiff in Florida (MSPRC, or "MSP Entity #2") had no rights because of the botched assignment. Unlike that plaintiff, the plaintiff in Illinois (MSP Recovery Claims Series 44, LLC, or "MSP Entity #3") *did* receive a valid assignment of rights. So, in its view, the two cases do not involve the "same claim" because one plaintiff has rights, and the other did not.

This Court is more than a little dubious of that argument. It seems to go to the merits of the claim, not whether the claim is the same. By the look of things, it is the same claim, even if the first person had no rights to bring it.

The phrase "same claim" doesn't mean "same *winnable* claim." The first plaintiff doesn't need to have a winning hand for Rule 41(d) to apply. After all, plaintiffs sometimes drop claims because they *don't* have a winning hand.

What matters is what the first plaintiff was *claiming*, not whether that plaintiff had a shot at winning. Maybe the first plaintiff had no ammunition and thus fired blanks, but even so, the first plaintiff did take aim at the defendant.

Plaintiff's argument also seems unduly narrow, given the breadth of the text of Rule 41(d). The claims in the first case and the second case do not have to be identical. Rule 41(d) applies when the plaintiff files a second action "based on or including the same claim" as the first action. *See* Fed. R. Civ. P. 41(d).

That language means that "claims in the new case [must] arise from the same nucleus of operative facts such that the new case can be said to be 'based on or including' previously brought and dismissed claims." *MSP Recovery Claims, Series LLC v. Atl. Specialty Ins. Co.*, 2021 WL 4935767, at *7 (M.D. Fla. 2021) (cleaned up). Courts have imposed costs "only in those cases where the plaintiff has brought an identical, or nearly identical, claim and requested identical, or nearly identical, relief." *Garza v. Citigroup Inc.*, 311 F.R.D. 111, 114–15 (D. Del. 2015), *subsequently aff'd,* 881 F.3d 277 (3d Cir. 2018) (citing *Young v. Dole*, 1991 WL 158977, at *3 (E.D.N.Y. 1991)).

Resolving whether the cases involve the same claim would pose one final wrinkle. Plaintiff argues that the cases do not involve the "same claim" because the underlying beneficiaries are different. But once again, things get slippery.

It gets slippery because the Florida cases were class actions, but the Illinois case is not. And the Illinois case refers to the obligation to make payments for unnamed "beneficiaries," without pinning them down. By the look of things, there is a lot of overlap.

In Florida, MSPRC ("MSP Entity #2") filed class action complaints on behalf of Medicare payors who made payments for Medicare-eligible beneficiaries. *See MSP Recovery*

*Claims, Series LLC v. Zurich Am. Ins. Co.*, 1:17-cv-24013 (S.D. Fla. 2017) (Dckt. No. 1-2, at ¶¶ 3–4) ("*Zurich I*") ("Plaintiff and the putative class members provided Medicare benefits to Medicare-eligible beneficiaries . . . . This lawsuit seeks reimbursement for those medical expenses paid for by the Plaintiff and the putative Class Members that should have been reimbursed by Defendant under the Medicare Act."); *MSP Recovery Claims, Series LLC v. Zurich Am. Ins. Co.*, 1:17-cv-24015 (S.D. Fla. 2017) (Dckt. No. 1-2) ("*Zurich II*"). MSPRC ("MSP Entity #2") filed suit on behalf of multiple Medicare Advantage Organizations (not simply HFHP), but did not name the organizations or the beneficiaries.

But in Illinois, MSP Recovery Claims Series 44, LLC ("MSP Entity #3") did not bring a class action. Instead, it filed a complaint with two claims. The first claim is about the failure to pay benefits for unspecified "beneficiaries," plural. *See* Cplt., at ¶¶ 32, 55, 56, 59, 61, 62, 66 (Dckt. No. 1). The only beneficiary identified in the complaint is "M.B." *Id.* at ¶¶ 39–55.

The second claim is for declaratory relief. And it isn't confined to M.B. Once again, it refers to "beneficiaries." *Id.* at ¶¶ 70, 71, 73. "MSPRC 44 seeks a declaratory judgment from this Court establishing that Zurich has a historical, present, and continuing duty to reimburse HFHP for payments made on behalf of beneficiaries' [plural] accident-related medical expenses." *Id.* at ¶ 73. The company also seeks a declaration of what amounts are due and owed by Zurich to HFHP generally, on behalf of all beneficiaries. *Id.*; *see also* Prayer for Relief.

The Illinois lawsuit may not purport to be a class action. But it seems to sweep more broadly than a claim about only M.B., too. It covers "beneficiaries," plural. The complaint even refers to M.B. as a "representative beneficiary." *Id.* at p.13 (heading); *id.* at ¶ 84. So, by the look of things, it is not at all clear that the Illinois lawsuit and the Florida lawsuit do not overlap on the merits.

At the end of the day, both cases seem to be about an attempt to recover unpaid amounts on behalf of a large group of beneficiaries. *See MSP Recovery Claims, Series LLC v. Hartford Fin. Serv. Grp., Inc.*, 3:20-cv-305 (D. Conn. 2021) (Dckt. No. 47, at 20 of 32) ("[T]he court has little difficulty concluding that the current case is 'based on or include[es] the same claim[s] against the same defendant[s]' as in the four Florida actions identified by defendants . . . . [I]n all five cases, MSPRC pleaded its claims by including examples or summaries within its complaints while at the same time making clear that it seeks to raise many claims beyond those specifically described within the bodies of those complaints.").

On this record, saying that the cases do not involve the "same claim" because the named beneficiaries are different seems too cute by half (if not three-quarters). The reality is that the complaints look a lot more alike than dissimilar. The thrust is the same, and many of the core allegations are the same, too.

If in doubt, the tie would not go to the folks in MSP-Land. They created layers and layers of complexity, using corporate shells and series and everything else under the sun in Delaware law. Some of it seems more than a little gimmicky, too, such as the "fair warning" that "this case involves nuanced, time-traveling contracts." *See* Pl.'s Supp. Mem., at 2 (Dckt. No. 39); *see also id.* ("In other words, these agreements were 'effective' before they were signed.").[6] The shell game comes with a price, and part of the cost is the loss of the benefit of the doubt.

For now, the Court will hold off on deciding whether the cases involve the "same claim" within the meaning of the Rule. It is enough to make a simple point: the Florida cases and the Illinois case do not involve the same plaintiff. For all the complexity, the outcome is simple. The plaintiffs are different, so Rule 41(d) does not apply.

---

[6] When your legal argument relies on the need for time travel, that's not a good sign.

\*     \*     \*

One final coda.  Just when you think that the well of complexity has finally run dry, think again.  Of all things, a few weeks ago, Plaintiff MSP Recovery Claims Series 44, LLC filed a "Notice of Transfer of Interest."  *See* Pl.'s Notice of Transfer of Interest (Dckt. No. 44).

MSP Recovery Claims Series 44, LLC has apparently added another link to the "chain of assignments."  *Id.*  Basically, after filing is most recent brief "Series 44-20-456, a designated series of Plaintiff, assigned its rights to recover the conditional payments at issue in this matter to Series 23-05-1946 – a designated series of MSP Recovery Claims, Series LLC."  *Id.*  (If this story was the script of an admittedly boring movie, no one would believe it.)

MSP Recovery Claims Series 44, LLC believes that the assignment does not require any other changes, including to the case caption.  The Court will address this issue by separate order.

### Conclusion

For the foregoing reasons, the motion for costs and motion to stay under Rule 41(d) is hereby denied.

Date:  August 15, 2023

_____

Steven C. Seeger
United States District Judge